BROWN, Chief Judge.
| TAppellant, Louisiana Farm Bureau Mutual Insurance Company (“Farm Bureau”), seeks review of a judgment finding that a policy issued by appellee, Shelter Insur- *327 anee Company (“Shelter”), was not in full force and effect at the time of the accident; and, consequently, that Farm Bureau was responsible to pay the full settlement amount to Marsh Nolan. We reverse.

Facts

On June 18, 2005, Wilson Mabray and Marsh Nolan, among others, were shooting fireworks in Union Parish, Louisiana. Wilson Mabray threw a bottle rocket at Nolan striking him in the right eye and causing serious injuries. Nolan subsequently instituted this lawsuit to recover damages for his injuries.
At the time of the accident, Wilson Ma-bray was a 19-year-old college student residing with his parents. Although divorced, Wilson’s parents shared joint custody. Each of his parents maintained separate liability policies: Sarah Mabray with Farm Bureau in the amount of $100,000, and J. Patton Mabray (“Mr. Mabray”) with Shelter in the amount of $500,000.
Prior to trial both insurers agreed to settle Nolan’s claim for the total amount of $100,000. Although each insurer paid one half, Shelter reserved the right to assert a defense of lack of coverage. The insurers stipulated that if the court found that the Shelter policy provided coverage then Shelter would pay 5/6 of the $100,000 settlement and Farm Bureau would pay the remaining 1/6. Conversely, if Shelter was successful in contesting the lack of coverage then Farm Bureau would be responsible for the full settlement sum of $100,000 and would return the $50,000 initially paid by Shelter. 12After trial was held, the trial court concluded that the Shelter policy had lapsed and ordered Farm Bureau to reimburse Shelter’s $50,000 with legal interest. For the following reasons, we reverse and render.

Discussion

At issue in this case is whether the policy written by Shelter to Mr. Mabray was in full force and effect on the date of the accident. It is undisputed that the policy in question was set to lapse on June 2, 2005, and that the bottle rocket incident occurred on June 18, 2005. At dispute, however, is whether a renewal/premium notice was mailed to Mr. Mabray.
Shelter alleges that a premium notice stating that the policy would lapse on June 2, 2005, was mailed to Mr. Mabray on April 28, 2005. Shelter, however, only produced evidence of its bulk mailing policy of renewal/premium notices. It did not present any evidence that this notice was in fact sent to Mr. Mabray.
The evidence introduced at trial further showed that Bobby Lawrence, the Shelter agent who wrote the policy, received an email from Shelter stating that the policy had lapsed for nonpayment and containing an itemization of the amount due to maintain the policy. Based upon his receipt of this e-mail, on June 29, 2005, Mr. Lawrence contacted Mr. Mabray who, on that day, paid the annual premium of $4,820 plus a $20 reinstatement fee.
Mr. Mabray testified that he had no recollection of receiving the renewal notice. He stated that he worked long hours as a farmer and that occasionally mail would stack up on his desk during the farming season. |sMr. Mabray stated that he had carried approximately ten policies with Shelter over the last ten years.
Renewal is defined in La. R.S. 22:636.1 A(5) as the “issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term.” When a *328 policy expires from the running of its term and is not disrupted, the statutory provisions regarding renewal are applicable, rather than the cancellation provisions. Adamson v. State Farm Mutual Auto. Ins. Co., 95-2450 (La.App. 1st Cir.06/28/96), 676 So.2d 227.
It is clear that the instant case involves the renewal of an insurance policy, not the cancellation, since there is no evidence that the policy was disrupted or terminated prior to its anticipated end date, June 2, 2005. The insurance company clearly manifested its willingness to renew the insurance policy. It, however, must prove that the renewal/premium notice was actually sent to the insured at the correct address with appropriate postage.
The standard of review to be applied to factual findings in a civil matter is the manifest error standard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial court in the case sub judice wrote that “[t]he mailing process as testified to by [Shelter] alone is insufficient to tip the scales in favor of Shelter.” We agree. However, we do not agree with the trial court’s conclusion that the “unwillingness of Mr. Mabray to flatly deny receipt” tips the scales “if ever so slightly.”
|4Mr. Mabray testified that during the time in question he had about “a half dozen or so” policies with Shelter and knew exactly what a premium notice looked like, as “I’ve seen plenty of them.” Mr. Mabray stated that he always “opened the Shelter stuff’ and that he always paid the premiums in full for the entire year, but he had no knowledge of receiving this particular premium notice.
Based upon the aforementioned, we find that there was insufficient evidence for the trial court to conclude that the premium notice had been mailed, and, as such, its final determination otherwise was manifestly erroneous.
The testimony of Bobby Lawrence is also significant. He testified that he would have received the e-mail message from Shelter on June 6 or 7 but that he did not see the message until June 29. He stated that he was out of the office from June 17-27 at an agent’s conference. According to Lawrence, he called Mr. Ma-bray on June 29 and Mr. Mabray paid the entire premium and the $20 reinstatement fee at that time. Lawrence further testified that “[t]he company tells if a premium is due June 2nd, then if its paid within ten days, then the company can go back and reinstate it back to the original date.” (Emphasis added). Obviously, had Lawrence contacted Mabray within ten days after receipt of the e-mail, the matter would have been resolved before the June 18 accident. Moreover, the premium was accepted without any conditions excluding coverage between the date of lapse and reinstatement. Under these circumstances, we find that the policy covered the default period.
| ¿Conclusion
For the foregoing reasons, we hereby REVERSE the decision of the district court holding that the Shelter Insurance policy had lapsed and RENDER judgment in favor of Louisiana Farm Bureau Mutual Insurance Company.
IT IS ORDERED, ADJUDGED AND DECREED that Shelter Mutual Insurance Company shall pay to Louisiana Farm Bureau Mutual Insurance Company 5/6 of the $100,000 settlement made to Marsh Nolan with credit for the $50,000 already paid together with legal interest.
All costs of these proceedings are assessed to Shelter Mutual Insurance Company.