VICTORY, J.
 
 *
 

 |TWe granted this writ application to determine whether the court of appeal erred
 
 *667
 
 in reversing the trial court’s factual finding that Shelter Mutual Insurance Company (“Shelter”) mailed a renewal notice to its insured, Pat Mabray (“Mabray”), such that the insured’s nonpayment of the premium caused the policy to lapse and be ineffective at the time of the accident. After reviewing the record and the applicable law, we find the court of appeal violated the manifest error standard of review and reinstate the ruling of the trial court.
 

 FACTS AND PROCEDURAL HISTORY
 

 On June 18, 2005, Marsh A. Nolan was struck by a bottle rocket launched by Wilson Mabray, the 19-year-old son of Pat Mabray. Nolan filed suit against Wilson Mabray, Louisiana Farm Bureau Mutual Insurance Company (“Farm Bureau”), and Shelter. Wilson Mabray’s parents were divorced. Farm Bureau issued a policy to Wilson Mabray’s mother, Sarah Mabray, and Shelter issued a farm owner’s policy to Mabray. Prior to trial, Wilson Mabray was dismissed and faced no personal exposure. Farm Bureau and Shelter reached an agreement to settle plaintiffs claim 12for $100,000.00, and each insurer paid one-half. However, Shelter reserved the right to assert a defense of lack of coverage. The insurers stipulated that if the court found the Shelter policy provided coverage, then Shelter would pay 5/6 of the $100,000.00 settlement and Farm Bureau would pay the remaining 1/6. If Shelter was successful in contesting the lack of coverage, Farm Bureau would be responsible for the full $100,000.00, and would return the $50,000.00 paid by Shelter. Thus, the sole issue at trial was whether the Shelter policy was in effect at the time of the accident.
 

 Shelter asserted it mailed Mabray a renewal notice to his correct address on April 28, 2005 stating the premium was due on June 2, 2005, but did not receive payment until June 29, 2005. Therefore, the policy had lapsed and was not in effect on the date of the accident. In support of this defense, Shelter presented the testimony of Jon Himmelberg, a Personal Lines Underwriting Supervisor for Shelter in 2005, who was familiar with the policies and procedures concerning policy status, renewals, cancellations, and payments. He testified that on April 28, 2005, Shelter mailed a premium notice to Mabray indicating that for Policy No. 17-72-3111866-1, payment of $4,820.00 was due on June 2, 2005 at 12:01 a.m. The notice provided that “no insurance is afforded if premium is not received by due date or if check is not honored for payment.” The renewal period of the policy would be 12 months from June 2, 2005. A copy of this premium notice was introduced into evidence.
 

 Himmelberg described Shelter’s procedures relative to renewal notices as follows:
 

 ... an invoice is sent directly to the insured 35 days prior to the due date.
 

 As far as the payment of the premium, if an insured pays the premium, you know, by the due date or within 10 days after that date we renew the policy without lapse. The insured can mail the payment directly to the home office. They could have paid the agent. If the payment is received after 10 days, you know, by either the agent or the | shome office, the policy is reinstated at Shelter’s option effective the date the payment is received; and as far as method of mailing of the renewal notice we send those out first class mail.
 

 Himmelberg testified renewal notices are issued by way of computer-generated bulk mail, that is, the computer generates the notice, stuffs it in an envelope and seals the envelope. The system pre-loads the letters and any notices going to a
 
 *668
 
 particular postal area, bundles those, and then they are delivered to the post office by someone in Shelter’s mailing department. He testified that there was no breakdown in Shelter’s mailing processes that day, i.e., there was no computer breakdown and the mailing department was not out sick that day. He stated that if there would have been any such breakdown, the effects would have been so massive that it would have come to the company’s attention. Based on his research into the matter, he stated the renewal notice was mailed to Mabray on April 28, 2005.
 

 Himmelberg testified that on June 20, 2005, Shelter mailed a lapse letter to Ma-bray indicating Shelter was “concerned because we did not receive your premium payment for the above policy” and stating that “[c]overage provided by this policy was terminated at 12:01 a.m. on June 2, 2005, because of nonpayment of premium.” Mabray’s agent, Bobby Lawrence, was copied on that letter. In addition, Shelter also sent a lapse notice electronically to Lawrence five days after the renewal date. Lawrence testified he was out of the office from June 17-27, 2005 and did not see that notice until June 29, 2005, at which time he contacted Mabray and told him he needed to promptly pay his premium. Mabray met Lawrence that day and gave him a check for the entire amount of the premium. The policy was reinstated effective June 29,2005.
 

 Mabray testified at trial and by way of deposition. He testified he did not recall receiving the renewal notice, and if he had, he would have promptly paid the premium |4as was his practice. However, he testified it was possible he overlooked the notice as April through June were his busy farming times during which he “might have stuff sit on my desk for a couple of weeks before it gets opened.” Further, he stated “I could certainly not swear that it did not come to my mailbox and actually get on my desk. I’m saying that I never saw it.” Shelter presented evidence that Mabray had numerous insurance policies with Shelter and several policies had lapsed in the past for untimely payment of the premium.
 

 Based upon this testimony, the trial court found Shelter had mailed the renewal notice to Mabray on April 28, 2005 based on the following factual findings:
 

 John Himmelberg, Commercial Lines Underlying Supervisor, testified through trial deposition. His testimony established as follows:
 

 1.) He was familiar with renewals, cancellations and general status of various insurance policies, including the policy at issue;
 

 2.) There was no breakdown in Shelter’s mailing process in April 2005;
 

 3.) There was no computer breakdown causing an inability to mail and/or otherwise causing interference with the mailing process of Shelter regarding renewal notices in April 2005;
 

 4.) Mr. Mabray’s renewal notice was mailed on April 28, 2005.
 

 Further, Mr. Himmelberg confirmed that Shelter had no existing policy on June 18, 2005. Mr. Himmelberg testified that the renewal process implemented by Shelter was implemented with regards to the renewal notice issued to Mr. Mabray, dated April 28, 2005 and was posted to his address of record; was mailed thirty-five (35) days prior to the due date; that all internal procedures of Shelter were followed as to the mailing of the renewal notice in question; and Mr. Mabray had allowed other policies to lapse and be reinstated in the past.
 

 Mr. Mabray was less than vehement that he had not received notice.
 

 
 *669
 
 Farm Bureau correctly points out that Bobby Lawrence, Jr., Mr. Mabray’s Shelter agent, received e-mail notice of an “Agent’s Lapse Letter.” This Court paraphrases a portion of their summation on this point as follows:
 

 | ^Lawrence was a Shelter agent and Pat Mabray had used him as his agent for many years. The policy is alleged to have lapsed on June 2, 2005 and the accident occurred on June 18, 2005. The testimony of Himmelberg and Lawrence,. Jr. shows that an Agent’s Lapse Letter ... was posted to Bobby Law- • rence, Jr. on Shelter’s E-Commerce system approximately five days after the policy allegedly lapsed, or
 
 before
 
 the date of the accident.
 

 The Agent’s Lapse Notice, which was directed to the agent, Bobby Lawrence, Jr., by Shelter, stated as follows:
 

 “This policy had lapsed because of non-payment. See policyholder and return with information below.”
 

 Below the above language was an itemization showing the total amount owed under the farmowner’s policy. This agent’s lapse notice is clearly a directive sent to the agent directing the agent to see the policyholder. However, Bobby Lawrence did not contact the insured, Pat Mabray, until June 29, 2005, over the three weeks after the notice was sent by Shelter to Lawrence, (and 11 days after the accident).
 

 The Court’s view of this notice diverges from that of Farm Bureau, as paraphrased above. The notice to the agent is not a statutorily mandated fail-safe, but rather appears to be a marketing device to promote retention of customers.
 

 The sending of the Agent’s Lapse Notice tends to verify that the internal notification processes of Shelter were functioning properly and adds to the credibility of their assertions of mailing notice to Mabray.
 

 The mailing process as testified to by Mr. Himmelberg alone is insufficient to tip the scales in favor of Shelter. However, the unwillingness of Mr. Mabray to flatly deny receipt and the evidence of efficacy of other internal Shelter notification procedures do tip the scales, if ever so slightly and there is therefore judgment in Shelter’s favor.
 

 The court of appeal reversed, disagreeing with the “trial court’s conclusion that the ‘unwillingness of Mr. Mabray to flatly deny receipt’ tips the scales ‘if ever so slightly.’ ”
 
 Nolan v. Mabray,
 
 44,922 (La.App. 2 Cir. 12/16/09), 27 So.3d 326, 328. Noting that Shelter did not present any evidence that the notice was “in fact sent to Mr. Mabray” and that Mabray testified he was familiar with Shelter’s premium notices, “always ‘opened the Shelter stuff and ... always paid the premiums in full for the entire year, but ... had no knowledge of receiving this particular premium [ r,notice,” the court of appeal found there was insufficient evidence for the trial court to conclude the premium notice had been mailed.
 
 Id.
 
 The court of appeal further found that “[ojbviously, had Lawrence contacted Mabray within ten days after receipt of the e-mail, the matter would have been resolved before the June 18 accident.”
 
 Id.
 
 We granted Shelter’s writ application, concerned the court of appeal failed to follow the manifest error standard in overturning the trial court’s factual finding.
 
 Nolan v. Mabray,
 
 10-0373 (La.4/30/10), 34 So.3d 300.
 

 DISCUSSION
 

 La. R.S. 22:1335, applicable to home
 
 *670
 
 owner’s insurance,
 
 [1]
 
 provides:
 

 A. An insurer that has issued a policy of homeowner’s insurance shall not fail to renew the policy unless it has mailed or delivered to the named insured, at the address shown in the policy, written notice of its intention not to renew. The notice of nonrenewal shall be mailed or delivered at least thirty days before the expiration date of the policy ...
 

 B. The notice of nonrenewal shall not be required if the insurer or a company within the same insurance group has offered to issue a renewal policy, or if the named insured has provided written notification to the insurer of the intention of the insured not to renew.
 

 La. R.S. 22:887(G), applicable to property and casualty insurance, contains a similar provision relative to renewals:
 

 (1) No insurer shall fail to renew a policy providing property or casualty insurance unless a notice of intention to not renew is mailed or delivered to the named insured at the address shown on the policy at least thirty days prior to the effective date of nonrenewal.
 

 [[Image here]]
 

 (3) This Subsection shall not apply:
 

 (a) To policies regulated by R.S. 22:1266 and 1267.
 

 |7(b) If the insurer has manifested its willingness to renew the policy either through the same company or a company in the same group of companies.
 

 (c) In the case of nonpayment of the premium.
 

 (d) If the named insured has provided written notification to the insurer of the insured’s intention to not renew the policy.
 

 (e) In cases of fraud by the insured.
 

 The issue in this case involves whether the insurer notified the insured of its willingness to renew the policy by mailing the insured the policy renewal notice. There are no explicit statutory provisions governing this notice.
 
 [2]
 
 However, in
 
 Ray v. Associated Indemn. Corp.,
 
 373 So.2d 166 (La.1979), this Court interpreted La. R.S. 22:636.1(E) governing auto insurance (now numbered La. R.S. 22:1266), a statute containing provisions similar to those in La. R.S. 22:887 and 1335, and held that if an insurer fails to comply with the notice requirement and is not subject to any listed exceptions, the policy is automatically renewed. La. R.S. 22:636.1(E) provided:
 

 No insurer shall fail to renew a policy unless it shall mail or deliver to the
 
 *671
 
 named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This subsection shall not apply: (1) if the insurer has manifested its willingness to renew; or (2) in case of nonpayment of premium; provided that, notwithstanding the failure of an insurer to comply with this subsection, the policy shall | ^terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.
 

 The Court interpreted this section as meaning that once the insurance company demonstrates its “willingness to renew,” Section (E) did not apply. However, the Court held “the insurer’s willingness to renew is ineffective unless it is communicated to the insured, because he will be aware that the choice of continuing coverage rests solely with him only if he knows that the company is willing to renew the policy.” 373 So.2d at 168. Thus, the insurer is required to manifest its willingness to renew the policy in order to avoid automatic renewal of the policy.
 
 Id.
 
 at 169. The Court held an insurer has a prima facie burden to prove that it mailed a required renewal notice, which creates a presumption the insured received the notice. However, the insured may rebut this presumption, typically by testifying that the notice was never delivered.
 
 Id.
 
 This is a factual determination to be made by the trial court.
 

 In
 
 Ray,
 
 summary judgment was denied where the insurance company’s business records indicated the renewal notice had been mailed but the insured specifically denied receiving the notice. The Court held this raised a material issue of fact to be decided at trial, stating that the insured “may not persuade the trier of fact that she did not receive a premium notice, but the law affords her an opportunity to do so.”
 
 Id.
 
 In fact, several courts have denied summary judgment on this issue, where the insurance company offered business records and practices to prove the notice was mailed and the insured denied receipt.
 
 See Cole v. Lavine,
 
 595 So.2d 398 (La.App. 3 Cir.1992);
 
 Ledbetter v. Myers,
 
 438 So.2d 700 (La.App. 2 Cir.1983);
 
 but see Adamson v. State Farm Mut. Auto. Ins. Co.,
 
 95-2450 (La.App. 1 Cir. 6/28/96), 676 So.2d 227 (granting summary judgment on issue of renewal notice).
 

 Here, the insured relies on the cases cited above and argues that Shelter did not prove the notice was mailed because it did not provide the testimony of anyone with ^knowledge that the notice was actually mailed. However, after a trial on the merits, several courts have held the insurance company proved mailing of the renewal notice without testimony from a person who actually mailed the notice.
 
 See Hale v. Corley,
 
 36,911 (La.App. 2 Cir. 3/5/03), 839 So.2d 1056;
 
 Hemperly v. Aetna Casualty and Surety Co.,
 
 516 So.2d 1202 (La.App. 2 Cir.1987). That is appropriate because the issue of mailing is a factual issue to be decided by the trial court, and testimony from the person who actually mailed the notice is not required. Our Code of Evidence expressly permits the use of records of regularly conducted business activities as exceptions to the hearsay rule. La. C.Evid. art. 803(6) and (7). Further, this Court has unequivocally countenanced the admission of circumstantial evidence as inferential proof of a fact.
 
 See Linnear v. CenterPoint Energy Entex/Reliant Energy,
 
 06-3030 (La.9/5/07), 966 So.2d 36, 41-42;
 
 Rey v. Cuccia,
 
 298 So.2d 840, 843 (La.1974) (proof by direct or circumstantial evidence is sufficient to constitute a preponderance when taking the evidence as a whole). Finally, while a factual determination on the notice issue may not be appropriate for summary judgment, it is prime for trial on the merits,
 
 *672
 
 where the factfinder’s determination is entitled to great weight.
 

 This all comes down to a matter we are faced with all too often in our discretionary review of civil cases-the failure to follow the manifest error standard of review by courts of appeal. A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong.
 
 See e.g., Perkins v. Entergy Corp.,
 
 00-1372 (La.3/23/01) 782 So.2d 606, 612;
 
 Theriot v. Lasseigne,
 
 93-2661 (La.7/5/94), 640 So.2d 1305, 1310. In order to reverse a trial court’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) hnfurther determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous.
 
 Perkins, supra; StobaH v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993).
 

 We have explained this standard many times:
 

 [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
 

 Guillory v. Lee,
 
 09-0075 (La.6/26/09), 16 So.3d 1104, 1116-17 (citing
 
 Perkins,
 
 supra). Further, “where there are two permissible views of the evidence, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong.”
 
 Guillory, supra
 
 at 1117 (cites omitted).
 

 The trial court found Shelter had mailed the renewal notice to Mabray on April 28, 2005, based on Himmelberg’s testimony as to Shelter’s business practices regarding renewal notices in general and his testimony that Shelter’s practices were followed regarding this specific renewal notice. The trial court determined this finding was supported by evidence that Shelter emailed notice that the policy had lapsed to Mabray’s agent prior to the accident, that Mabray would not specifically deny receipt of the renewal letter, and that he had let policies lapse in the past. Him-melberg’s testimony, along with that of Mabray and Lawrence, establishes a reasonable factual basis for a finding that the renewal notice was mailed to Mabray, and nothing in the record establishes this finding was clearly wrong or manifestly erroneous. The evidence cited by the court of appeal to reverse this factual finding was merely evidence in support of its own evaluation of the facts, and, as we have ninstructed courts of appeal numerous times, that is not a permissible basis to overturn a trial court’s factual finding. Merely because there is some factual support in the record for a contrary view does not permit an appellate court to overturn a trial court’s factual finding under the manifest error rule. Thus, because the court of appeal did not follow the manifest error rule in overturning the trial court’s factual finding that Shelter properly mailed the renewal notice to Mabray on April 28, 2005, we reverse the judgment of the court of appeal. The trial court’s judgment that the Shelter policy lapsed on June 2, 2005 and was not in effect at the time of the June 18, 2005 accident is reinstated.
 

 
 *673
 
 DECREE
 

 For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
 

 REVERSED; TRIAL COURT JUDGMENT REINSTATED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . Arguably, a farm owner’s policy could be treated as providing commercial insurance, which would place the policy under the purview of La. R.S. 22:1267. However, neither party has raised this issue, and, in any event, La. R.S. 22:1267(D)(2) contains substantially the same relevant language as La. R.S. 22:1335(B).
 

 [2]
 

 . The notice provisions relative to renewals are not as stringent as the notice provisions relative to cancellation. For a policy to be cancelled, notice must be mailed or delivered to the insured 10 days before the cancellation is to be effective, and the burden of proving mailing is as follows:
 

 B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer’s records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
 

 C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
 

 La. R.S. 22:887.