JOHNSON, J.
[,In this automobile tort case, Plaintiffs appeal the granting of Defendant Menda-kota Insurance Company’s summary judgment. For the following reasons, we affirm.
FACTS & PROCEDURAL HISTORY[1]
Plaintiffs, Wilmer Contreras, Ana Sauce-da, Carlos Moran, Jacky Osweld, Julio Vidal, Elena Vidal and Franklin Flores, filed suit on March 1, 2015 for damages allegedly sustained in an automobile accident that occurred on March 1, 2014. Plaintiffs contend Mr. Contreras was operating a vehicle on Power Blvd. when a vehicle driven by Hannah Vesper changed lanes and struck their vehicle. They named as defendants Ms. Vesper; her automobile liability insurer, Mendakota Insurance Company (“Mendakota”); and Old American County *901 Mutual Fire Insurance Company (“Old American”) as the uninsured/underinsured motorist carrier.
On December 14, 2015, Mendakota filed a motion for summary judgment seeking dismissal of Plaintiffs’ claims against it on the basis there was no valid automobile liability policy in effect on the date of the accident. Specifically, Mendakota maintained that Ms. Vesper’s insurance policy was canceled two months prior to the accident based on her failure to renew the policy by paying the required premium.
In support of its motion for summary judgment, Mendakota submitted several exhibits, including the insurance policy at issue, the policy’s declarations page, a copy of the insured’s insurance card, the renewal notice, the notice of expiration, and an affidavit of Sharon Mason, a senior product administrator with Mendakota. These exhibits showed that Mendakota issued an automobile insurance policy in Mississippi to Ms. Vesper, whose address was listed as British | ^Columbia, Canada, for a 2012 Toyota that was principally garaged either in Canada or Lorman, MS. The insurance policy had an effective date of July 10, 2013 and an expiration date of January 10, 2014.
According to the terms of the policy, the policy would automatically terminate at the end of the current policy period if the insured did not accept the offer of Mendakota to renew the policy and pay the required renewal premium when due. Mendakota attached a copy of an undated renewal notice which offered Ms. Vesper a new policy term from January 10, 2014 to July 10, 2014, upon payment of the premium. The renewal notice showed the premium was due on December 31, 2013, if it was going to be paid in full, or January 10, 2014, if it was going to be paid in six payments over six months. Ms. Mason stated that the renewal notice was sent to Ms. Vesper on November 26, 2013, but that Ms. Vesper never paid the renewal premium. Ms. Mason explained that because Mendakota never received additional premium payments from Ms. Vesper, her automobile policy expired on January 10, 2014. Additionally, an undated notice of expiration showed that Ms. Vesper was advised that her policy “has expired in accordance with the terms and conditions of the above mentioned policy.”
After a hearing, the trial court granted Mendakota’s motion for summary judgment. The day after the hearing, the trial court signed a written judgment granting Mendakota’s motion.[2]
Plaintiffs seek review of this judgment claiming the trial court erred in granting summary judgment because Defendant failed to properly cancel the relevant insurance policy.

J¿SSUE

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment because the automobile policy at issue was not properly cancelled under Louisiana or Mississippi law. Plaintiffs contend *902 Mendakota failed to mail a notice of cancellation ten days prior to cancelling the policy, as required by law, and failed to provide proof of when it mailed the renewal notice or the cancellation notice in order to start the running of the ten-day period.

DISCUSSION

The summary judgment procedure is a procedural device used to secure the just, speedy, and inexpensive determination of actions by avoiding a full-scale trial where there is no genuine factual dispute. La. C.C.P. art. 966(A)(2); Pouncy v. Winn-Dixie La., Inc., 15-189 (La.App. 5 Cir. 10/28/15); 178 So.3d 603, 605. Summary judgment should be granted if the motion and supporting documents, including the pleadings, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations and admissions, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A).
The initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. The non-moving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(D). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Pouncy, supra.
Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria that governs the trial court’s | .determination of whether a summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Bernard v. Ellis, 11-2377 (La. 7/2/12); 111 So.3d 995, 1002.
The “[ijnterpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.” Bernard, 111 So.3d at 1002.
Since the insurance policy at issue was issued in Mississippi and the accident occurred in Louisiana, Plaintiffs contend we must first determine whether Mississippi or Louisiana law governs.[3] Under La. C.C. art. 3537, “an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.” To make such a determination, the court must evaluate
the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the con *903 tract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other.
La. C.C. art. 3515, the more general choice-of-law provision, likewise states that the law of the state whose policies would most seriously be impaired if its laws were not applied to the issue governs an issue in a case that has contacts with another state. Being a more general rule, Article 3515 sets forth that such determination is to be evaluated by considering
Isthe strength and pertinence of the relevant policies,of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
In Champagne v. Ward, 03-3211 (La. 1/19/05); 893 So.2d 773, the Louisiana Supreme Court addressed the issue of choice-of-law for insurance contracts issued in a foreign jurisdiction. In Champagne, the plaintiff was a resident of Mississippi, his vehicle was registered in Mississippi, and the vehicle was covered by a policy of insurance obtained in Mississippi. Nonetheless, the plaintiff sought to have Louisiana law apply to the interpretation of his UM coverage because no UM benefits were available under Mississippi law because the UM coverage was reduced on a dollar by dollar basis by the amount of liability coverage available from the tort-feasor. The supreme court held that even though an accident occurs in Louisiana and involves a Louisiana resident, courts must conduct a choice-of-law analysis to determine which state’s law applies. In applying the analysis, the supreme court ultimately found that Mississippi law applied.
•In Champagne, the supreme court directed that the starting point in a multi-state case is to first determine there is a difference between Louisiana law and the law of the foreign state, and then conduct a choice-of-law analysis under La. C.G. arts. 3515 and 3537. In Lee v. Sapp, 14-1047 (La.App. 4 Cir. 3/4/15); 163 So.3d 60, 63, the Fourth Circuit stated that “[i]f the governing law of each state is identical, or so similar that the same result would be reached under either law, a ‘false conflict’ exists and, thus, no need exists to determine which state’s law applies.”[4] However, the Lee court went on to find that Florida law governed because the automobile liability insurance policy was issued and delivered in | ^Florida. As such, the Lee court cited and relied on Florida law regarding the interpretation of contracts, even though it noted that the result would be same if it were to apply Louisiana law because it was relying on the terms, and conditions of the insurance policy itself.
Conversely, in Maldonado v. Kiewit La. Co., 13-756 (La. App. 1 Cir. 3/24/14); 146 So.3d 210, the First Circuit took a different approach. After noting that it was not necessary to conduct a choice-of-law analysis to determine whether Louisiana or Texas law applied because the relevant law *904 of the two states was the same regarding contract interpretation and duty to defend, the court applied Louisiana law.
In the instant case, we find no true conflict between the relevant Louisiana and Mississippi laws regarding the interpretation of contracts and statutory provisions;[5] thus, we find it unnecessary to conduct a choice of law analysis.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Sensebe v. Canal Indemnity Co., 10-703 (La. 1/28/11); 58 So.3d 441, 445. “When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation maybe made in search of the parties’ intent and courts must enforce the contract as written.” Id.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. LeBlanc v. Babin, 00-1813 (La.App. 5 Cir. 4/24/01); 786 So.2d 850, 854. Absent |7a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id. at 855. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Id. at 856.
The terms of the insurance policy at issue specifically provide in pertinent part:
Automatic Termination
If we offer to renew your policy and you or your representative do not accept this offer and make good payment of the required renewal premium when due, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have rejected our renewal offer.
According to the affidavit of Ms. Mason, Mendakota sent a Renewal Notice to Ms. Vesper on November 26, 2013, offering to renew her policy for a term of January 10, 2014 to July 10, 2014. The Renewal Notice shows that the premium was due on December 31, 2013, if payment was made in full, or January 10, 2014, if payment would be made irt six payments over a six month period. Ms. Mason attested that Mendako-ta never received any additional premium from Ms. Vesper after the Renewal Notice was sent. Thus, according to Ms. Mason and the terms of the policy, Ms. Vesper’s policy terminated on January 10, 2014.
Plaintiffs did not offer any evidence to refute Ms. Mason’s testimony. While Plaintiffs challenge the affidavit of Ms. Mason on the basis she did not have personal knowledge of the mailing of the Renewal Notice, testimony from the person *905 who actually mailed the notice is not required, See Nolan v. Wilson Mabray, 10-373 (La. 11/30/10); 51 So.3d 665, 671.
Plaintiffs argue that notwithstanding the insurance contract, La. R.S. 22:1266 required Mendakota to give 10 days notice prior to cancelling Ms. |8Vesper’s policy. Plaintiffs contend that because Mendakota failed to prove this notice was sent to Ms. Vesper, it is not entitled to judgment as a matter of law because a question of fact remains as to whether Mendakota properly terminated the insurance policy under the statute.
It appears Plaintiffs are relying on La. R.S. 22:1266(D)(1), which provides that an insurer is required to mail or deliver a notice of cancellation for nonpayment of premium to the insured at least 10 days prior to the effective date of cancellation or the notice of cancellation is ineffective. However, the last sentence of the subsection states, “[t]his subsection shall not apply to nonrenewal.” This makes it clear that the provisions for cancellation, namely the 10-day notice, do not apply to the renewal of a policy. Lockwood v. Allstate Ins. Co., 47,746 (La.App. 2 Cir. 1/16/13); 109 So.3d 931, 934.
Renewal is defined as “the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer.” La. R.S. 22:1266(A)(5). When a policy expires from the running of its term, it is not being disrupted but rather is “dying a natural death,” and the statutory provisions regarding renewal are applicable rather than the cancellation provisions. Lockwood v. Allstate Ins. Co., 109 So.3d at 934; Dominique v. Rodriguez, 06-578 (La.App. 5 Cir. 11/28/06); 947 So.2d 63, 66. It is clear that the instant case involves the renewal of an insurance policy, not cancellation, because there is no evidence that the policy was disrupted or terminated prior to its anticipated termination date of January 10, 2014.
The nonrenewal of an automobile insurance policy is governed by La. R.S. 22:1266(E)[6], which provides in pertinent part:
|9(1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This Subsection shall not apply:
(a) If the insurer has manifested its willingness to renew.
(b) In case of nonpayment of premium
[[Image here]]
Subsection E makes it clear that an insured is presumed to know the term of his insurance policy and has no right to expect that the policy will continue in effect until he decides to pay another premium. Lockwood, 109 So.3d at 934.
If the insurance company has clearly manifested its willingness to renew an insurance policy and the insured does not avail himself of the opportunity within the time period allowed, the insurance policy will lapse at the termination of the period. Dominique, 947 So.2d at 66. The insurer is not required to renew a policy or give notice of its intention not to renew if it “has manifested its willingness to renew.” By stating its willingness to renew a policy, the insurer gives the insured the option of continuing or terminating coverage and, if the insured is silent, the insurer *906 is no longer obligated to renew the policy. Id.
The insurer’s willingness to renew is ineffective unless it is communicated to the insured. Thus, the insurer is required to manifest its willingness to renew the policy in order to avoid automatic renewal of the policy. Nolan, 51 So.3d at 671. An insurer has a prima facie burden to prove that it mailed a required renewal notice, which creates a presumption the insured, received the notice. The presumption may.be rebutted by the insured by testifying that the notice was never delivered. Id.
Upon de novo review, we find that Men-dakota issued an automobile policy to Ms. Vesper that was effective from July 10, 2013 until January 10, 2014. The evidence shows that Mendakota offered to renew Ms. Vesper’s policy by sending her a notice of renewal with a due date of either December 31, 2013 or January 10, |]02Q14, depending on the type of payment made. Mendakota never received any renewal premium from Ms. Vesper on or before the end of the policy period. Plaintiffs offered no contradicting evidence to the fact that Mendakota manifested its willingness to renew Ms. Vesper’s policy. There is no evidence from the insured, Ms. Vesper, indicating she did not receive the notice of renewal or that she paid the renewal premium. Accordingly, Ms. Vesper’s policy expired by its own terms at the end of the policy period on January 10, 2014.[7]
We find that Mendakota has adequately established that Ms. Vesper’s automobile insurance policy was not in effect on the date of the accident, March 1, 2014. As such, we find Mendakota was entitled to summary judgment as a matter of law.
DECREE
For the foregoing reasons, we affirm the trial court’s judgment granting summary judgment in favor, of Mendakota and dismissing all of Plaintiffs’ claims against it.
AFFIRMED

. This appeal contains a designated record and, therefore, this Court is limited in its knowledge of the procedural history of the case.

. The initial judgment signed by the trial court did not contain the required decretal language in order to render the judgment final because it failed to indicate the specific relief granted. See Morraz-Blandon v. Voiron, 16-112 (La.App. 5 Cir. 8/25/16); 199 So.3d 1220, 1221. As such, after the appeal was lodged, we issued an order instructing the trial court to amend the judgment to include the necessary decretal language. The trial court signed an amended judgment on November 17, 2016 to include language that "Summary Judgment is granted in favor of Mendakota Insurance Company fully dismissing all claims of plaintiffs.” The amended judgment corrected the deficiency in the judgment; accordingly, we find that a final judgment has been rendered and is reviewable on appeal.

. Mendakota never raised the choice of law issue but rather simply applied Louisiana law in its motion for summary judgment. It was only in Plaintiffs’ opposition to the motion for summary judgment that the choice of law issue was raised.
In Sensebe v. Canal Indemnity Co., 10-703 (La. 1/28/11); 58 So.3d 441, 443 n.1, the supreme court noted that where an accident occurs in Louisiana involving a Louisiana resident and the applicable insurance policy was issued outside of Louisiana, a choice of law analysis is appropriate. However, in Sensebe, the supreme court noted that the choice of law issue was never raised and that the defendant argued for the application of Louisiana law in its motion for summary judgment; thus, the supreme court found that the defendant conceded that Louisiana law applied and •conducted no choice of law analysis. Here, Plaintiffs raised the choice of law issue at the trial court level and again on appeal.

. We note that the Lee, court cited Arabie v. CITGO Petroleum Corp., 10-2605 (La. 3/13/12); 89 So.3d 307, 327, in support of this statement; however, the cited portion of the Arabie case is from the dissent.

. Similar to Louisiana law, Mississippi law provides that "insurance policies are contracts and must be enforced according to their provisions.” Minn. Life Ins. Co. v. Columbia Casualty Co., 164 So.3d 954, 968 (Miss. 2014). Mississippi law further requires the policy be looked at as a whole, considering all relevant portions together and, when possible, give operative effect to every provision to reach a reasonable result. Id. The court is to look at the meaning of the language used—when words are plain and unambiguous the court will afford them their plain, ordinary meaning and will apply them as written. Id. Additionally, there is no statutory provision in Mississippi that requires notice by the insurance company to the insured when a policy is not renewed due to nonpayment of premiums. See Lynch v. Miss. Farm Bureau Casualty Ins. Co., 880 So.2d 1065, 1068 (Miss. App. 2004).

. The Louisiana Supreme Court has interpreted this provision to mean that if an insurer fails to comply with the notice requirement and is not subject to any listed exceptions, the policy is automatically renewed. Nolan v. Wilson Mabray, 10-373 (La. 11/30/10); 51 So.3d 665, 670, citing Ray v. Associated Indemnity Corp., 373 So.2d 166 (La. 1979).

. See Maddox v. Keen, 33,072 (La.App. 2 Cir. 4/7/00); 756 So.2d 1279, 1283, where the Second Circuit found the plaintiffs’ failure to timely pay the renewal premium caused-the policy to lapse by its own terms. The court noted that by its own terms, the plaintiffs’ insurance policy was to remain in effect until July 15, 1992. The court explained that by sending a renewal notice to the plaintiffs on June 11, 1992, with a due date of July 15, 1992, the insurer manifested its intent to renew the plaintiffs’ policy and continue coverage through January 15, 1993, if the plaintiffs paid the renewal premium by July 15, 1992. As such, the court concluded that the insurer was obligated to renew the policy only if the plaintiffs indicated their desire to renew the coverage and made payment of the premium on or before July 15, 1992. Because the plaintiffs failed to timely pay their renewal premium, the policy expired by its own terms.