SUSAN M. CHEHARDY, Chief Judge.
^Plaintiff, PAF, Inc. (“PAF”), appeals a judgment of the 24th Judicial District Court finding a breach of contract by defendant, Regions Bank (“Regions”), and awarding PAF $13,297.44 in damages. In this appeal, PAF contends that it is entitled to further damages. For the reasons that follow, we reverse the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

On May 9, 1991, PAF entered into a purchase agreement with Gulf South Bank and Trust Co. (“Gulf South”) to purchase property located at 905-07 Westbank Expressway in Gretna, Louisiana. The purchase agreement contained the provision that PAF’s “corporations presently banking at Gulf South Bank will permanently be relieved of service charges on all accounts with Gulf South Bank as a condition of the sale.”
On September 23, 1996, Regions Bank acquired Gulf South Bank pursuant to a merger agreement. As Gulf South’s successor, Regions became responsible for all liabilities and obligations of Gulf South, including the provisions of the 1991 purchase agreement, which became binding upon Regions.
| sIn 2007, Regions changed computer systems, at which point PAF’s accounts began to incur charges which PAF claimed should have been excluded pursuant to the 1991 purchase agreement. PAF notified Jennifer Boudreaux, the branch manager at Regions’ Gretna branch, who reimbursed PAF for the charges. Then, in January of 2009, Ms. Boudreaux moved to the Marrero branch, and the new manager of the Gretna branch refused to reimburse PAF for the charges. Following a series of complaints from PAF, Regions conducted an analysis of PAF’s accounts in September 2009 and determined that several charges had been mistakenly reimbursed. Judy Wilson, a Treasury Management officer with Regions, testified that the reimbursements disbursed by Ms. Boudreaux in 2008 mistakenly included “miscellaneous charges.” She explained that there is a distinction between “service charges” and “miscellaneous charges” in the banking industry. On account of Ms. Boudreaux’s failure to distinguish between the two, Regions’ analysis concluded that PAF had been reimbursed in excess of the amount owed, but Regions forgave this debt and confirmed that PAF would not incur “service charges” pursuant to the 1991 purchase agreement.
Indeed, from September 2009 onward, PAF did not incur “service charges,” but did continue to incur “miscellaneous charges.” Dissatisfied with this result, on November 25, 2009, PAF filed a “Petition for Specific Performance and Damages,” seeking reimbursement for charges withdrawn from its account in violation of the 1991 purchase agreement, in the amount of $8,982.44. PAF also sought any other damages to which it was entitled and spe *479 cific performance. Then, in March 2010, PAF closed its six accounts with Regions and opened seven new accounts with Whitney Bank.
On April 4, 2012, PAF filed a motion for partial summary judgment, pursuant to which, on June 8, 2012, the parties entered into a consent judgment. |4This judgment held that the 1991 purchase agreement is binding upon Regions and that Regions is “liable for reimbursement for any and all service charges applied to its accounts by Regions, reserving to this court the determination of the amount of reimbursement due, and reserving to the plaintiff any claims for other damages, if any.”
The matter proceeded to a bench trial and on August 29, 2013, the trial court issued its judgment, finding:
Regions Bank breached its contractual obligations owed to PAF, Inc. Regions Bank failed to honor the terms of the agreement, which provided that PAF, Inc. was exempt from paying service charges on all accounts held with Gulf South Bank, Regions Bank’s predecessor. Regions Bank failed to honor the terms of the agreement by subsequently charging PAF, Inc. service fees on its bank accounts.
As a result, the court found Regions liable in the amount of $13,297.44 together with legal interest from the date of judicial demand and for all costs of the proceedings. On appeal, PAF raises three assignments of error: (1) the trial court erred by failing to award damages for service charges incurred at Whitney Bank; (2) the trial court erred by failing to award future damages; and (3) the trial court erred by failing to render judgment for specific performance. In Regions’ answer to PAF’s appeal, it argues that the trial court erred in finding a breach of contract and awarding damages and requests the judgment of the trial court be reversed.

DISCUSSION

The issue before us is one of contract interpretation, which is subject to de novo review on appeal. Subervielle v. State Farm, Mut. Auto. Ins. Co., 08-0491 (La.App. 4 Cir. 1/7/09), 32 So.3d 811, 812. In the interpretation of contracts, our starting point is the Louisiana Civil Code. See Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co., 179 F.3d 169, 175 (5 Cir. 1999). La. C.C. art.2045 defines the interpretation of a contract as “the determination of the common intent of the|Bparties.” The official 1984 Revision Comment states that such intent is “objective in nature,” i.e., “what the parties must have intended, given the manner in which they expressed themselves in their contract.” Thus, “[wjhen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. Indeed, “[t]he words of a contract must be given their generally prevailing meaning.” La. C.C. art. 2047. And, “[wjords of art and technical terms must be given their technical meaning when the contract involves a technical matter.” Id. Additionally, “when a dispute exists over the terms of a contract, the controversy must be resolved in light of the principle that informed and experienced parties do not ordinarily bind themselves to unreasonable obligations.” Spangenberg v. Yale Materials Handling-Louisiana, Inc., 407 So.2d 1270, 1274 (La.App. 4 Cir.1981), unit denied, 412 So.2d 1096 (La.1982).
With these precepts in mind, we turn to the pertinent provision of the 1991 purchase agreement between the parties, which stated that PAF’s “corporations presently banking at Gulf South Bank will permanently be relieved of service charges *480 on all accounts with Gulf South Bank as a condition of the sale.”
Philip Fasullo, Jr., the owner of PAF, testified that at the time of the purchase agreement, there was no discussion as to what constituted “service charges.” Conversely, Larry Pieno, the attorney representing Gulf South Bank in the 1991 transaction, testified that at the time of the transaction there were “documents that identified what service charges were,” but they had not been attached to the purchase agreement. However, he explained that his understanding of “service charges,” as referenced in the purchase agreement, denoted charges designated as such in Gulf South’s schedule of fees.
[ rJudy Wilson, a Treasury Management officer with Regions Bank, testified that in the banking industry, there is a distinction between “service charges” and “miscellaneous charges.” Regions’ schedule of fees confirms this distinction, delineating separately “Service Charges” and “Miscellaneous Charges.” According to this schedule, service charges include fees for monthly account maintenance, checks, debits, credits, deposits, electronic debits, and electronic credits. Miscellaneous charges, on the other hand, include fees for overdrafts, returned checks, and stop payments.
This distinction is also employed by Whitney Bank. Whitney’s schedule of fees separately delineates service charges and miscellaneous charges, such that the service charges similarly include fees for monthly account maintenance, checks, debits, credits, deposits, electronic debits, and electronic credits, while miscellaneous charges include fees for overdrafts, returned checks, and stop payments.
This leads us to conclude that “service charges” and “miscellaneous charges” are terms of art in the banking industry. Consequently, under the circumstances of this case, where the two contracting parties were business entities, one of which was a bank, we find the parties intended the technical meaning of “service charges” as it is used in the banking industry. Therefore, only “service charges” in their technical sense are properly excluded from PAF’s accounts with Regions.
We now turn to the calculation of damages. The standard of review for a damage award for breach of contract is whether the trial court abused its. discretion. Hussain v. Khan, 14-65 (La.App. 5 Cir. 5/21/14), 142 So.3d 281, 283. The trial court awarded PAF $13,297.44 in damages. Although the court did not explain how it arrived at this figure, it is apparent that it is based upon the testimony of |7PAF’s expert witness, John Theriot, a CPA and certified forensic accountant. Mr. Theriot reviewed PAF’s monthly statements and determined that PAF’s operating account had incurred service charges in the amount of $12,958.36 from November 2007 through February 2010. Mr. Theriot also determined that PAF’s money order account had incurred $339.08 in service charges during this same span. The trial court’s damages award is the sum of these two figures. However, in making his calculations, Mr. Theriot admitted that he did not recognize the technical distinction between “service charges” and “miscellaneous charges.”
Ms. Wilson, who also reviewed PAF’s monthly statements, recognized this distinction and so reached a different conclusion regarding the service charges incurred by PAF. She concluded that PAF had incurred $1,000.98 in service charges on its operating account from November 2007 through February 2010. A review of each monthly statement makes clear that this figure represents the sum of those charges typically classified as “service charges” in the banking industry. For *481 instance, Ms. Wilson’s calculation of service charges in June 2008 included “Electronic Debits” ($0.07), “Deposits-Credits” ($14.60), “Items Deposited Regional” ($0.10), and “Items Deposited Other Fed” ($2.81) for a total of $17.58. She excluded “Return Item” fee ($144.00) and “Quick-books Monthly Fee” ($20.00) as “miscellaneous charges.” Ms. Wilson further testified that PAF had been reimbursed for all wrongly-incurred service charges, which was acknowledged by Philip Fasullo, III, PAF’s account manager.
Because Mr. Theriot made his calculations without utilizing the technical meaning of “service charges” as called for in the contract, we find his calculation was in error. Consequently, we find that the trial court abused its discretion in adopting this faulty calculation and awarding damages pursuant thereto.
IsBased upon our review of the record, PAF has been reimbursed for all wrongly-incurred “service charges” from November 2007 through February 2010. Therefore, the trial court’s judgment finding a breach of contract and award of damages is reversed. On account of this finding, we pretermit discussion of plaintiffs assignments of error seeking further damages.
Regarding plaintiffs request for specific performance, La. C.C. art. 1986 provides:
Upon an obligor’s failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
In Sizeler Prop. Investors, Inc. v. Gordon Jewelry Corp., 544 So.2d 53, 54 (La.App. 4 Cir.1989), writ granted, 548 So.2d 1215 (La.1989), order dissolved, 552 So.2d 372 (La.1989), the fourth circuit found specific performance was impracticable in part because it would require the reorganization of a no longer existing business.
In the present cáse, we find specific performance is impracticable because it would require the reestablishment of a contractual relationship between the parties. PAF terminated the 1991 purchase agreement when it voluntarily closed its accounts with Regions. With no contractual relationship, Regions no longer has an enforceable obligation to PAF. Therefore, while we cannot compel specific performance, we offer the remedy of specific performance in the event PAF chooses to reestablish its relationship with Regions. In such an event, we hold that the bank accounts previously subject to the agreement would again be subject to the agreement as interpreted herein.

REVERSED.