786 So.2d 850 (2001)
Valerie J. LeBLANC, et al.,
v.
Lynwood BABIN, et al.
No. 00-CA-1813.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
As Amended on Rehearing May 11, 2001.
*852 Steven F. Griffith, Sr., Destrehan, LA, Attorney for Plaintiffs/Appellants Valerie J. LeBlanc and Paul J. LeBlanc.
Alan J. Yacoubian, Thomas A. French, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, Attorneys for Defendants/Appellants Louisiana Insurance Guaranty Association (Substituted in place of Automotive Casualty).
Elizabeth Palermo Blitch, Lou Anne Milliman, McGlinchey Stafford, New Orleans, LA, Attorneys for Defendants/Appellees Continental Insurance Company and USA Rent-A-Car Systems, Inc.
Panel composed of Judges GOTHARD, ROTHSCHILD, and SCHOTT, Pro Tempore.
GOTHARD, Judge.
This is an appeal from a trial court judgment granting defendant, Continental Insurance Company (Continental), summary judgment on an issue of the amount of liability insurance coverage. For reasons that follow we reverse.
The record shows that plaintiffs, Valerie and Paul LeBlanc, rented a vehicle from defendant, USA Rent-A-Car Systems, Inc. (USA) for one day in April, 1989. On that day the LeBlancs were involved in a motor vehicle accident with defendant, Lynwood Babin. Plaintiffs filed this action against USA and its insurer, Continental, as well as, Babin and his insurer, Automotive Casualty Insurance Company (Automotive). Because Babin was underinsured, plaintiff made a claim for uninsured motorists coverage with Continental. On December 4, 1990, a motion for summary judgment was granted in Continental's favor, which found no uninsured motorist coverage and dismissed Continental from the suit. Subsequently, a motion for new trial was granted which overturned that ruling. The matter was set for trial on November 5, 1992 and was later continued without date.
*853 Continental tendered a payment of $27,364.95 on September 29, 1992, which was accepted by plaintiffs. According to Continental's position in brief to this court, that amount represented the $20,000.00 limit of the policy plus legal interest and court costs.
On March 1, 1993, Continental filed a Motion for Summary Judgment seeking to be dismissed from the action. The memorandum in support of the motion maintained that the payment of all money owed to plaintiffs extinguished its debt to plaintiff. In the memorandum, Continental also maintains that the amount tendered to the plaintiffs represents its maximum exposure under the policy, which was written for $10,000.00 per person/ $20,000.00 per accident. Plaintiffs filed an opposition to defendant's motion in which they argued that the liability limits of the policy were increased to $100,000.00 per person/$300,000.00 per accident by endorsements to the policy. On July 18, 2000, plaintiff filed a Motion for Summary Judgment seeking to have the court declare the amount of uninsured motorist coverage available to them to be equal to the amount of liability coverage on the rental vehicle plaintiffs were driving at the time of the accident, which they maintain is $100,000.00 per person/$300,000.00 per accident.[1]
Both motions were heard by the court on July 31, 2000. The court rendered judgment on August 21, 2000 granting Continental's motion and denying the plaintiffs' motion. The judgment further dismissed Continental and USA from the suit and certified the judgment as final for the purposes of immediate appeal. It is from that judgment that plaintiffs appeal. A second appeal was filed by the Louisiana Insurance Guaranty Association (LIGA), which was substituted for Automotive upon Automotive's insolvency.
On appeal, plaintiffs and LIGA argue that endorsements numbers 3 and 4 increase the limits of liability in every circumstance. Continental argues that the increased liability limits only apply to rental or lease agreements which are made for one year or more, and therefore, do not apply in the instant case in which the agreement was for a one day rental. The trial court agreed with that interpretation, and rendered judgment in favor of Continental. In the alternative, Continental argues that plaintiffs' acceptance of the tendered check constitutes settlement and accord, thereby prohibiting them from making the claim for more money.
The policy in question is a business auto insurance policy written to USA by Continental. On the declarations page the limits of bodily injury liability are $10,000.00 per person/$20,000.00 per accident. The endorsements relied upon by plaintiffs and LIGA are numbered 3 and 4. Both endorsements were dated the same day as the original policy, and there has been no argument either in this court or the trial court that these endorsements were added subsequent to the issuance of the original policy.
Endorsement number 3 includes the following relevant clause:
The Limit of Insurance shown in the Schedule replaces the Limit of Insurance shown elsewhere in the policy or in any lease or rental agreement of one year or more that requires a lessee or rentee to provide primary insurance for you...... (Emphasis added) *854 The "Schedule" to which the clause refers is contained in Endorsement number 4 which includes the higher limits of $100,000.00 per person/$300,000.00 per accident for bodily injury liability coverage.
A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Summary judgments are now favored in the law and the rules should be liberally applied. Susananbadi v. Johnson, 97-91 (La.App. 5 Cir. 9/17/97), 700 So.2d 886. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. LSA.C.C.P. art. 966; Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
The mover bears the burden of proof. Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. Perricone v. East Jefferson General Hosp., supra. Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; McVay v. Delchamps, Inc., 97-860 (La.App. 5 Cir. 1/14/98), 707 So.2d 90.
In the instant case we are called upon to interpret the meaning of a clause in an automobile insurance policy. In Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759, 763-764, the Supreme Court fully discussed the rules for interpretations of contracts of insurance.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Central Louisiana Electric Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. LSA-C.C. Art.2045 (defining contractual interpretation as "the determination of the common intent of the parties"); Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La.1991) (citing W. McKenzie & H. Johnson, 15 Civil Law Treatise, Insurance Law and Practice § 4 (1986) ("Civil Law Treatise")).
The parties' intent as reflected by the words in the policy determine the extent of coverage. Trinity Industries, Inc. v. Ins. Co. of North America, 916 F.2d 267, 269 (5th Cir.1990) (citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La. 1988)). Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. Art.2047; Breland v. Schilling, 550 So.2d 609, 610 (La.1989); Capital Bank & Trust Co. v. Equitable Life Assur. Society of United States, 542 So.2d 494, 497 (La.1989).
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. [93-0911 La. 6] 2d Cir.), writ denied, 588 So.2d 100 (La.1991) (citing Zurich Ins. Co. v. Bouler, 198 So.2d 129 (La.App. 1st Cir.1967)); Harvey v. Mr. Lynn's, Inc., 416 So.2d 960, 962 (La. App. 2d Cir.1982) (collecting cases); Jefferson *855 v. Monumental General Ins. Co., 577 So.2d 1184, 1187 (La.App. 2d Cir. 1991). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La. 1974); Fruge v. First Continental Life and Accident Ins. Co., 430 So.2d 1072, 1077 (La.App. 4th Cir.), writ denied, 438 So.2d 573 (La.1983) (collecting cases); Hartford Acc. & Indem. Co. v. Joe Dean Contractors, Inc., 584 So.2d 1226, 1229 (La.App. 2d Cir.1991) (collecting cases).
Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. LSA-C.C. Art.2050; Pareti v. Sentry Indemnity Co., 536 So.2d 417, 420 (La. 1988); Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225, 231 (La.1979) ("one section or its placement is not to be construed separately and at the expense of disregarding other sections or placements"); Hartford, 584 So.2d at 1229 ("[n]o single portion of an insurance contract should be construed independent of the whole, i.e., the policy is to be construed in its entirety").
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993) (citing Breland, supra). Under this rule, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La.1991). LSA-C.C. Art.2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art.2056; Civil Law Treatise, supra § 4; see also W. Freedman, 2 Richards on the Law of Insurance § 11:2[f] (6th Ed.1990) ("Richards") (noting that the rule of strict construction is also labeled the doctrine of contra proferentum).
"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." Trinity Industries, 916 F.2d at 269 (5th Cir.1990) (citing Benton, 379 So.2d at 231 and LSA-C.C. Arts.2045, 2050, 2053 and 2054). In insurance parlance, this is labelled the reasonable expectations doctrine. Richards, supra at § 11:2[g].
Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art.2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine *856 the parties' intent); Schroeder v. Bd. of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Massachusetts Mutual Life Ins. Co. v. Nails, 549 So.2d 826, 832 (La.1989); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, 113 (1953). When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Bernard Lumber Co., Inc. v. Louisiana Ins. Guar. Ass'n, 563 So.2d 261, 263 (La.App. 1st Cir.), writ denied, 566 So.2d 981 (La.1990) (citing Radar v. Duke Transp. Inc., 492 So.2d 532, 533-34 (La.App. 3d Cir.1986)). The determination of whether a contract is clear or ambiguous is a question of law. Watts v. Aetna Casualty and Surety Co., 574 So.2d 364, 369 (La.App. 1st Cir.), writ denied, 568 So.2d 1089 (La.1990).
(Footnotes omitted)
Following the above cited rules of law, we find that the trial court erred in finding that endorsement number 3 was limited to situations in which there was a rental or lease for one year or more. We find the endorsement does not limit the increase of liability to one year contracts of lease or rental. The endorsement, interpreted using the clear meaning of the words changes the limits "elsewhere in the policy or" in one year lease or rental contracts. The endorsement must be enforced as written. The use of the word or indicates an alternative, rather than a limiting change. This court does not have the authority to change or alter the terms of the policy under the guise of interpretation. Accordingly, we find the trial court erred in its interpretation of the clause to limit it to contracts of one year or more.
Continental argues in the alternative, that acceptance of the tendered check by plaintiffs is determinative of the issue. In support of that argument, Continental asserts that pursuant to the doctrine of accord and satisfaction payment of the claim on the policy and acceptance of the tendered check extinguished Continental's obligation to plaintiffs.
Under LSA-R.S. 22:658, an uninsured motorist carrier is required to pay undisputed amounts promptly to avoid being subjected to penalties and attorney fees. Under McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, (La.1985), the payment would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. Id. at 1091-2.
The check written to plaintiffs states on its face that it was intended as a "tender of policy limit plus interest & costs". There is nothing on the check to indicate that it was intended as a settlement in the matter. We believe the check was intended as a McDill tender to show good faith and to avoid the possibility of penalties and attorney fees should the plaintiffs be entitled to more under the terms of the insurance contract.
For the reasons assigned herein, we reverse the trial court's judgment which granted summary judgment in favor of Continental and dismissed Continental from the lawsuit.
REVERSED.

MOTION FOR REHEARING TO ADDRESS CLERICAL ERROR IN JUDGMENT
NOW INTO COURT, comes Valerie J. LeBlanc and Paul J. LeBlanc, appellants herein, and move this Honorable Court to amend and correct a clerical error that appeared in its Judgment of April 24, 2001.
The error appeared when it referred to the amount of uninsured motorist coverage *857 that was available to the LeBlancs in this accident case as $100,000 per person/$200,000 per accident.
The record reflects that the amount of uninsured motorist coverage is actually $100,000 per person/$300,000 per accident.

CONCLUSION
It is therefore respectfully submitted that this Honorable Court should issue an addendum or amendment to its original Judgment indicating that the total amount of uninsured motorist coverage available to the appellants herein are $100,000 per person/$300,000 per accident.
[Editor's Note: Corrections incorporated for purposes of publication.]
NOTES
[1] It is not clear from the record what caused the seven-year delay in the progression of this lawsuit.