JOHNSON, J.
Defendant, Louisiana Citizens Property Insurance Corporation ("Citizens"), appeals a judgment awarding Plaintiff depreciation value associated with her property loss claim from Hurricane Isaac. For the reasons that follow, we reverse.
In August 2012, Plaintiffs, Catherine and Emma Pecoraro, sustained property damage to their home on Jeanette Drive in Metairie as a result of Hurricane Isaac. At the time of their loss, Plaintiffs were insured by Citizens under a wind and hail policy. They submitted a claim to Citizens for the property damage, but the parties could not agree on the amount of loss. As a result, Plaintiffs invoked the appraisal clause of the insurance policy, which resulted in the parties selecting two appraisers - one on behalf of each party - to determine the amount of loss. The appraisers could not agree on the amount of loss; so, an umpire was selected, as per the policy, to resolve the dispute between the appraisers.
Both appraisers met with the umpire on July 15, 2014 to discuss their disagreements. The umpire rendered his report on August 20, 2014, valuing the property loss at $35,686.19 in replacement cost value ("RCV") for Coverage A - Dwelling, and $1,585.02 in RCV for Coverage B - Other structures.[1] The umpire specifically noted *214 that prior payments and a deductible should be applied to the value of the loss, assuming the policy provides for such. Additionally, the umpire expressly stated that his report "does not take a position on whether RCV or ACV [actual cost value] is owed under the policy." Plaintiffs' appraiser signed the umpire's report indicating his agreement, thus setting the amount of loss under the terms of the policy.[2] Citizens then adjusted the amount of loss by taking into consideration depreciation, the policy deductible, and prior payments, and tendered payment to Plaintiffs below the amount of loss determined by the umpire.
Plaintiffs[3] subsequently filed suit on August 28, 2014 against Citizens, alleging that it refused to pay the full amount owed under the policy for their claim resulting from Hurricane Isaac. Plaintiffs further asserted that Citizens was arbitrary and capricious in refusing to fully pay their claim and, thus, acted in bad faith thereby entitling Plaintiffs to penalties and attorney's fees.
The parties proceeded to a bench trial on September 12, 2017. At the beginning of trial, the parties stipulated that the total amount in contractual dispute was $10,088.12. In post-trial briefs, the parties indicated that this amount was the difference between the replacement value of the damaged property, as determined by the umpire, and the actual cash value ("ACV") of the damaged property, as calculated and paid by Citizens. After taking the matter under advisement, the trial court rendered judgment on October 26, 2017, finding Citizens liable to Plaintiff for the $10,088.12, or the difference between the ACV it had already paid and the RCV as determined by the umpire. The trial court did not find Citizens acted arbitrarily and capriciously in handling Plaintiff's claim.
In its reasons for judgment, the trial court concluded that although Citizens believed the policy at issue was an ACV policy, the policy language, when liberally construed, allowed for the payment of property damage in an amount required to repair or replace the property. It determined that the policy was ambiguous given the fact the appraisal provision did not specifically refer to ACV. The trial court reasoned that because ambiguity in an insurance policy must be resolved in favor of the insured, Plaintiff was clearly entitled to the difference between the ACV, which was paid to Plaintiff, and the RCV, which was determined by the umpire.
Citizens filed this appeal raising as its sole assignment of error the trial court's failure to apply the ACV limitation of coverage as clearly set forth in the declarations page of the policy.
There are no factual disputes in this case. The sole issue before us - whether Citizens owes ACV or RCV under the terms of the policy - involves the interpretation *215 of the insurance policy language. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Sher v. Lafayette Ins. Co. , 07-2441 c/w 07-2443 (La. 4/8/08); 988 So.2d 186, 192, rehearing granted on other grounds , 07-2441 (La. 7/7/08); 988 So.2d 186. Interpretation of an insurance contract is a question of law, which is subject to a de novo review on appeal without deference to the legal conclusions of the trial court. See Power v. State Farm Fire & Casualty Co. , 15-796 (La. App. 5 Cir. 5/26/16), 193 So.3d 471, 473 ; PAF, Inc. v. Regions Bank , 14-195 (La. App. 5 Cir. 9/24/14), 150 So.3d 477, 479.
The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. Thus when interpreting an insurance contract, courts must discern the common intent of the parties. See La. C.C. art. 2045 ; Doucet v. Huffine Roofing & Construction , 02-1049 (La. App. 5 Cir. 2/25/03), 841 So.2d 916, 919. In ascertaining the common intent of the parties, courts must begin their analysis with a review of the words of the insurance contract. Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. La. C.C. art. 2048 ; Doucet , supra . Moreover, an insurance contract must be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. La. C.C. art. 2050 ; Doucet , supra .
When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. La. C.C. art. 2046 ; Doucet , supra . Courts lack authority to alter the terms of an insurance contract under the guise of contractual interpretation when the contract's provision are unambiguous. Id.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. LeBlanc v. Babin , 00-1813 (La. App. 5 Cir. 4/24/01), 786 So.2d 850, 854. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Id. at 855.
If an insurance contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. Grefer v. Travelers Ins. Co. , 04-1428 (La. App. 5 Cir. 12/16/05), 919 So.2d 758, 767. Ambiguity is to be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co. , 93-911 (La. 1/14/94); 630 So.2d 759, 764. "The court should construe the policy to 'fulfill the reasonable expectations of the parties in light of the customs and usages of the industry.' " Id. (internal citations omitted).
In the present case, Citizens argues that its policy clearly limits coverage to the ACV of the determined loss and thus, the trial court erred in allowing Plaintiff to recover the depreciation value of $10,088.12. Plaintiff maintains the policy is ambiguous as to whether coverage under *216 the appraisal clause of the policy is for ACV or RCV of the loss and, thus, should be construed against Citizens in favor of the insured so as to allow Plaintiff to recover the higher RCV. The parties rely on various sections of the policy to support their respective arguments. Citizens relies on the declaration page, which states that ACV will be used for purposes of determining loss. Conversely, Plaintiff never addresses the declaration page and its reference to ACV, but instead relies on the appraisal clause and loss settlement clause to argue that the policy is unclear.
The declaration page of Plaintiff's policy expressly provides, "Valuations for purposes of determining loss will be at ACTUAL CASH VALUE."[4] The bottom of the declaration page states that "[t]hese Declarations together with the common policy conditions, coverage declarations, form(s), and endorsements, if any, issued complete the above numbered policy." The forms and endorsements section of the declaration page lists several items, including the "DWG 1 01 93 - Dwelling Property Basic Form" ("DWG form"). Thus, it is clear that the declaration page is part of the policy and is to be read together with the DWG form to determine the coverage provided by the policy.
The appraisal clause of the DWG form states:
If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
The DWG form also contains a "Loss Settlement" provision that provides:
Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.
We find no ambiguity in the insurance contract. In applying the laws of contract interpretation, it is clear under the plain language of the policy that Citizens will pay the ACV of the determined loss, except when the repair or replacement value is a lesser amount at which time Citizens will pay the lesser amount. The mere fact the appraisal clause only refers to the "amount of loss" without specifying that the loss is valued for purposes of payment under the policy to the ACV does not render it ambiguous. As previously noted, the policy must be read as a whole and one provision may not be read to the exclusion of another provision. When the policy is construed as a whole, it is clear that the value of loss, for purposes of Plaintiff's policy, is determined using ACV and not RCV.
The record shows that the umpire valued the amount of loss using only the RCV and not the ACV, despite being asked to *217 give the ACV by Citizens' appraiser. Citizens' claims adjuster, Allison Blossman, testified that she has never been involved in an appraisal process where the umpire has refused to give the ACV. Nonetheless, Citizens used its own calculations of depreciation to determine the ACV from the RCV set by the umpire and paid the ACV.[5]
Upon de novo review, we find the insurance policy at issue is unambiguous. Under the clear terms of the policy, Citizens is to pay the insured's loss based on ACV, not RCV. Thus, we find the trial court erred in awarding Plaintiff $10,088.12 in depreciation value. Accordingly, we reverse the judgment of the trial court and render judgment in favor of Citizens, dismissing Plaintiff's claim with prejudice.
REVERSED

The umpire also assigned a $954.30 value for Coverage D, which appears to relate to additional living expenses while Plaintiffs were unable to live in the home during repairs. According to the testimony of Allison Blossman, a claims adjuster for Citizens who was also qualified as an expert in the field of general insurance adjusting practices, Plaintiffs' policy did not include coverage for additional living expenses. No issue regarding a claim for additional living expenses was raised on appeal.

The policy provides, "If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

Suit was initially filed by Catherine and her mother, Emma Pecoraro. Emma Pecoraro passed away during the pendency of suit and Catherine substituted herself in her mother's place as the administratrix of her mother's estate.

The policy defines ACV as "the amount needed to repair or replace the damaged or destroyed property, minus depreciation." It further defines replacement cost (RC) as "the initial payment of actual cash value (ACV) of a loss, and the subsequent payment of additional amount [sic] that is actually and necessarily expended to repair or replace the damages or destroyed property."

We note that Citizens' method of calculation of the ACV and the amount it determined to be the ACV was never challenged. Additionally, there is no dispute that Citizens paid the ACV of Plaintiff's loss.