DAVID DEFELICE, INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON, PASCAL HONDROULIS AND KATIE HONDROULIS

VERSUS

FEDERATED NATIONAL INSURANCE COMPANY, ENVIRO-CLEAN SERVICES, INC., AND KNIGHT BUILDING INSPECTION SERVICES, L.L.C.

NO. 21-CA-179

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 774-278, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

January 19, 2022

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Hans J. Liljeberg

**<u>AFFIRMED IN PART;</u>**
**<u>REVERSED IN PART;</u>**
**<u>REMANDED</u>**
    **HJL**
    **SMC**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Lalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DAVID DEFELICE, INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON,
PASCAL HONDROULIS, AND KATIE HONDROULIS
    Galen M. Hair
    Trent J. Moss

COUNSEL FOR DEFENDANT/APPELLEE,
FEDERATED NATIONAL INSURANCE COMPANY
    James A. Prather
    James W. Adair

**LILJEBERG, J.**

Plaintiffs/Appellants, David DeFelice, individually and on behalf of his minor son, Pascal Hondroulis, and Katie Hondroulis, appeal the trial court's January 22, 2021 judgment granting the motion for summary judgment filed by Defendant/Appellant, Federated National Insurance Company ("Federated"), and dismissing all of their claims against Federated, with prejudice. At issue is whether Federated paid the full limit of coverage for mold loss afforded under a mold endorsement contained in a homeowner's insurance policy Federated issued to Mr. DeFelice and whether Federated is liable for bad faith damages to plaintiffs. For the reasons stated more fully below, we affirm the trial court's judgment in part and reverse in part. More specifically, we affirm the trial court's findings that 1) the mold endorsement at issue is unambiguous and enforceable; 2) Federated paid the full limit of coverage for mold loss; and 3) no further amounts are due to plaintiffs for mold-related damages. We further affirm the portion of the trial court's judgment dismissing plaintiffs' claims for bad faith damages arising from Federated's refusal to appraise additional mold-related damages. However, upon *de novo* review, we find that the trial court erred in dismissing any other claims for bad faith damages that plaintiffs have alleged against Federated, as Federated did not move for summary judgment on these additional claims. La. C.C.P. art. 966(F) limits summary judgment "to those issues set forth in the motion under consideration by the court at that time."

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2016, plaintiff, David DeFelice, owned a single-story home located at 3709 Green Acres Road, in Metairie, Louisiana, and resided there with plaintiff, Katie Hondroulis. On June 10, 2016, their home sustained water damage. Mr. DeFelice testified at his deposition that he discovered the water was coming from

the toilets in two adjoining bathrooms.[1] He used a "Shop-Vac" to remove the water and immediately contacted a plumber, who came the same day. Mr. DeFelice testified that while inspecting all of the plumbing in the house, the plumber noticed mold on the walls of the cabinet under the kitchen sink.

At that time, Federated provided a homeowner's policy insuring Mr. DeFelice and his home. On June 21, 2016, Mr. DeFelice contacted Federated and notified them of the water damage and the plumber's discovery of mold in the house. At the request of Federated, Enviro-Clean Services, Inc. ("ECS"), a mold remediation and mitigation company, evaluated the damage to Mr. DeFelice's house on June 22, 2016.[2] Mr. DeFelice asserts that ECS verbally assured him that the house was "safe" to occupy. On that same day, a mold inspector from Knight Building Services, L.L.C. ("Knight") came to the property and collected various samples to test for mold. Knight issued a report of its findings on the following day, June 23, 2016, indicating that that there was mold contamination from failed plumbing at the location of a bathroom toilet and confirmed microbial growth at a kitchen cabinet. The report further indicated that "professional remediation may be necessary at this time."

On or about June 24, 2016, adjuster, Louis Lumpkins, inspected the damage to the home and created an estimate of damages for Federated. After applying the $2,500.00 deductible, on August 3, 2016, Federated tendered checks to Mr. DeFelice for $2,929.24 for damages to the home, and $5,000.00 for payment of the

---

[1] Mr. DeFelice testified at his deposition that the plumber he hired told him it was "a clear water backflow, not sewerage."

[2] In *DeFelice v. Federated National Insurance Company*, 18-374 (La. App. 5 Cir. 7/9/19), 279 So.3d 422, this Court considered the trial court's judgment granting ECS's exception of prescription and dismissing all of plaintiffs' claims against ECS as untimely. Plaintiffs brought claims against ECS arising from its alleged misrepresentations that the home was safe to occupy and/or failure to warn of alleged hazards of staying in the home and being exposed to mold. This Court affirmed the trial court's decision to dismiss as untimely, the individual claims of Mr. DeFelice and Ms. Hondroulis that did not arise from the health of their infant, Pascal, because prescription began to run on June 23, 2016, and Mr. DeFelice and Ms. Hondroulis did not filed suit until July 24, 2017. *Id.* at 429. However, we reversed the portion of the judgment dismissing claims asserted on Pascal's behalf, as well as plaintiffs' individual claims arising from Pascal's health issues, because they did not begin to accrue until Pascal was born in August 2016. *Id.* at 427-28.

limitation of liability for mold coverage. Mr. DeFelice did not deposit the checks, and instead sent a letter on September 12, 2016, indicating that he disputed the amount of proceeds paid by Federated and demanded an appraisal in accordance with the terms of the policy. He testified that he did not do anything to address the mold in the home at that time because he "was waiting for a proper settlement."

On August 16, 2016, Ms. Hondroulis gave birth to a son, Pascal. Plaintiffs contend that after Pascal began residing in the home, he developed breathing issues and was diagnosed with bronchiolitis. On December 23, 2016, Pascal's pediatrician indicated that Pascal's exposure to mold in the home was contributing to his difficulty breathing, and as a result, plaintiffs moved out of their home and into Mr. DeFelice's parents' home on January 1, 2017.

On July 24, 2017, plaintiffs filed a petition against Federated, ECS and Knight. Plaintiffs alleged that Federated acted in bad faith and breached its duty of good faith by failing to adjust their claims in a timely manner and failing to pay additional living expenses ("ALE") they incurred after they had to move from their home.

Following completion of the appraisal process, on or about August 7, 2017, appraisers for plaintiffs and Federated signed an appraisal award for $26,006.46 in damages to the dwelling, $1,393.27 for water mitigation, and $16,200.00 for ALE, for a total appraisal award paid to plaintiffs in the amount of $43,599.73.[3] However, a dispute remained between the parties regarding additional mold-related losses as Federated instructed its appraiser not to conduct any further appraisals of mold losses based on Federated's position that the policy only provided $5,000.00 in coverage for these damages, and that Federated paid this amount as part of its initial tender in August 2016.

---

[3] At his August 18, 2018 deposition, Mr. DeFelice testified that he did not use the funds he received for the appraisal award to begin repairs to his home because he lost his job and needed the money for living expenses.

On or about April 20, 2020, plaintiffs' appraiser, Anita Preston, prepared the following estimate indicating that an additional $31,858.51 was due to plaintiffs for mold remediation:

1.  Remove & Replace Kitchen Cabinets and counter Tops (sic) $10,500.00

2.  Remove & Replace baseboard, drywall and flooring.            $ 8,704.51

3.  Mold Remediation Cat 3 Water Loss                           $12,654.00

    Wire brush all structural Surfaces

    Hepa Vac dwelling

    Apply industrial strength hydrogen peroxide

    ***This estimate pertains to mold remediation only*** as instructed in the Driskill report. [Emphasis added.]

Shortly after receiving this additional estimate, Federated filed a motion for summary judgment asking the trial court to 1) uphold the application of the mold exclusion and endorsement and find the extent of coverage for mold loss is limited to $5,000.00; 2) find that no material dispute existed that Federated paid the full limit of coverage for mold loss afforded under the policy; and 3) dismiss any claims by plaintiffs for bad faith damages for the alleged failure to appraise additional mold losses because it tendered the entire $5,000.00 coverage limit in a timely manner after adjusting and inspecting plaintiffs' home. Federated argued that the clear terms of the policy's limitations excluded coverage for any mold-related loss above this amount.

In opposition, plaintiffs argued that the provisions limiting coverage for mold were ambiguous and unenforceable. Plaintiffs further claimed that the mold provisions did not limit their ability to recover for mold-related damages because the mold was caused by a covered peril – the underlying water event – and were not independently caused by mold, or at the very least questions of material fact existed regarding the cause of the mold-related damages. Finally, plaintiffs argued

that Federated acted in bad faith in failing to pay additional mold-related damages covered by the policy. Plaintiffs further noted that their bad faith claims were not limited to the mold-related losses, and that Federated acted in bad faith by failing to timely and adequately pay non-mold-related losses that were eventually awarded as part of the appraisal process.

On January 22, 2021, the trial court entered the following judgment granting Federated's motion for summary judgment and dismissing plaintiffs' claims for additional mold-related damages under the policy, as well as all of plaintiffs' claims for bad faith damages, as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed on behalf of Defendant, Federated National Insurance Company is hereby **GRANTED**, finding:

1. Defendant Federated National Insurance Company's "Limited Fungi, Wet or Dry Rot, or Bacteria Section I Coverage and Section II Exclusion" policy provision which limits coverage for mold loss to $5,000.00 except when caused by fire or lightning, is unambiguous and enforceable as a matter of law;

2. Subsequent to paying the appraisal award previously confirmed by this Court, any remaining disputed loss under the policy between the parties is due to losses from mold;

3. There is no material dispute Defendant, Federated National Insurance Company paid the full limit of coverage for mold loss under its homeowner's policy issued to Plaintiff David DeFelice, thus extinguishing its obligation to pay mold loss as a matter of law, Plaintiffs' claims for further policy proceeds are dismissed with prejudice, each party to bear their costs; and

4. Having failed to carry their burden of proof regarding their claims for bad faith penalties and attorney's fees, Plaintiffs' claims for such under the Louisiana Insurance Code are dismissed with prejudice, each party to bear their own costs.

Plaintiffs filed a timely motion for devolutive appeal, which the trial court granted on January 27, 2021.

## LAW AND DISCUSSION

Appellate courts review the granting of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary

judgment is appropriate. *Ross v. C. Adams Const. & Design*, *LLC*, 10-852 (La. App. 5 Cir. 6/14/11), 70 So.3d 949, 951. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The interpretation of an insurance policy usually involves a legal question which can be resolved properly in the frame work of a motion for summary judgment. *Ross*, 70 So.3d at 951-52.

### *First Assignment of Error*

In their first assignment of error, plaintiffs contend the trial court erred in finding the mold endorsement is unambiguous and enforceable.

An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577, 580. The judiciary's role in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art. 2045.

An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy. La. R.S. § 22:881. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Pecoraro v. Louisiana Citizens Insurance Corporation*, 18-161 (La. App. 5 Cir. 10/17/18), 258 So.3d 212, 215. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. *Id.*

Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of

21-CA-179                                      6

disregarding other policy provisions. *See* La. C.C. art. 2050; *LeBlanc v. Babin*, 00-1813 (La. App. 5 Cir. 4/24/01), 786 So.2d 850, 855. Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. *See* La. C.C. art. 2056; *LeBlanc*, *supra*. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Id*. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. *Simon v. State Farm Mutual Automobile Insurance Company*, 16-46 (La. App. 5 Cir. 9/8/16), 201 So.3d 1007, 1010.

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *LeBlanc*, 786 So.2d at 856. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Id.* The determination of whether a contract is clear or ambiguous is a question of law. *Id.*

Mr. DeFelice's policy includes an endorsement that excludes coverage for damages caused by mold, except when it results from fire or lightning, but allows for $5,000.00 of additional coverage when the mold results from a "Peril Insured Against other than fire or lightning" according to the following pertinent provisions:

Section I – Exclusions

A. ***We do not insure for loss caused directly or indirectly by any of the following***. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

10. 'Fungi', Wet or Dry Rot, or Bacteria[4]

'Fungi', Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of 'fungi', wet or dry rot, or bacteria.

This exclusion does not apply:

a. When 'fungi', wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the 'Fungi', Wet or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from 'fungi', wet or dry rot, or bacteria is covered.

\* \* \*

Section I – Property Coverages

E. Additional Coverages

\* \* \*

The following Additional Coverage is added:

13. 'Fungi', Wet Or Dry Rot, Or Bacteria

a. The amount shown in the Schedule above is the most we will pay for:

(1) The total of all loss payable under Section I – Property Coverages *caused by* 'fungi', wet or dry rot, or bacteria;

(2) The cost to remove 'fungi', wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the 'fungi' wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence, or level of 'fungi', wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration, or replacement. The cost of such testing will be provided only to the extent that there is

---

[4] Fungi is defined in the mold endorsement as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or by-products produced or released by fungi."

> a reason to believe that there is the presence of 'fungi', wet or dry rot, or bacteria.

* * *

> d. If there is covered loss or damage to covered property, not caused, in whole or in part, by 'fungi', wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, ***except to the extent that 'fungi', wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage***. [Emphasis added.]

Plaintiffs do not argue that any specific language in the policy or mold endorsement is ambiguous or allows for contradictory interpretations. Rather, they argue that the location of the provisions relating to the mold exclusion, additional coverage and particularly, the amount of the limit of liability for the additional coverage, renders it ambiguous. They specifically contend that it is difficult to locate the $5,000.00 limit of liability established by the endorsement and complain that it is adhesionary because it is contained in "fine print" at the botton of the Declarations page.

We disagree. The provisions establishing the mold exclusion, as well as the provisions providing for additional coverage, are contained within the mold endorsement quoted above and entitled "Limited Fungi, Wet or Dry Rot, or Bacteria, Section I Coverage and Section II Exclusion." The mold endorsement explains that if the amount of the limit of liability for the additional coverage is not contained in the Schedule located at the top of the endorsement, the information "will be shown in the Declarations." The Declarations are contained on a single page at the beginning of the policy and though it is in slightly smaller print, the $5,000.00 limit of liability is not "fine print" as suggested by plaintiffs. The $5,000.00 limit of liability is included on the Declarations page in the section listing the applicable endorsements, and indicates that the amount for the "Section

I" coverage added by the "Limited Fungi, Wet or Dry Rot, or Bacteria" endorsement is $5,000.00.

Plaintiffs cite to no authority to support a finding that these provisions are adhesionary or ambiguous. To the contrary, as discussed below, Louisiana courts have interpreted and enforced similar exclusions and endorsements. Accordingly, we find that this assignment of error is without merit.

### *Second and Third Assignments of Error*

In their second and third assignments of error, plaintiffs contend the trial court erred by finding that any disputed loss remaining after the appraisal award was due to losses from mold and that Federated paid the full limit of coverage for mold under the insurance policy.

When determining whether a policy affords coverage for an incident, an insured carries the burden of proving the incident falls within the policy's terms, whereas the insurer bears the burden of proving the applicability of an exlusionary clause within the policy. *Advanced Sleep Center, Inc. v. Certain Underwriters at Lloyd's*, 16-525 (La. App. 5 Cir. 2/8/17), 213 So.3d 1220, 1226.

As explained above, Federated filed a motion for summary judgment asking the trial court to find the "extent of mold loss recoverable by Plaintiffs is limited to the policy's $5000 coverage sub-limit previously tendered by Federated, and that Federated did not act in bad faith in not appraising mold losses in light of the prior payment of the policy's mold limit." Federated argued that the clear and unambiguous terms of the policy exclude coverage for loss *caused by* mold above this amount, including costs incurred to remediate, to access, and to test for mold. Federated recognized that if walls, baseboards and floors become wet due to a covered peril, an insurer would owe the amount necessary to remove and replace these items, even if mold happened to grow on them. The mere presence of mold on these items would not change their covered loss status because the mold did not

cause the loss. However, Federated argued that to the extent the presence of mold causes an increase in the loss, such increases are included in the $5,000.00 limit. Federated argued that during the appraisal process, the parties agreed on the items that became wet due to the water overflow, and that it paid for all of these damages. It contends that the only alleged losses that plaintiffs continue to seek to recover are costs to remediate mold, which are increases in loss due to mold subject to the $5,000.00 limit of liability.

In their opposition to the summary judgment motion, plaintiffs did not contest Federated's argument that it paid for all items that became wet due to the underlying water event. Rather, they argued that Louisiana courts have held that mold exclusions do not limit mold damage caused by a covered loss. Plaintiffs argued that Federated would have to prove that the damages were "independently caused by mold." Plaintiffs further disputed Federated's position that the policy only afforded $5,000.00 in coverage for any increases in loss due to mold because the "caused by mold" language in the exclusion does not limit damages caused by the underlying water event.

Both parties cite to two Louisiana cases in support of their positions – one decided by a state appellate court, *Orleans Parish School Board v. Lexington Insurance Company*, 12-95 (La. App. 4 Cir. 8/28/13), 123 So.3d 787, *writ denied*, 13-2205 (La. 10/2/13), 122 So.3d 546, and one decided by a federal district court, *Hayes v. Southern Fidelity Ins. Co.*, 2014 WL 5305683 (E.D. La. 10/15/14). We do not agree with plaintiffs' position that these cases require a finding that the mold endorsement at issue provides that mold-related damages are covered as long as they result from a covered peril or loss. Such an interpretation is not supported by the findings in these cases or by the clear and unambiguous language of the mold endorsement, which limits the amount of coverage for any increases in loss caused by mold, such as remediation and access costs.

In *Orleans*, *supra*, property owned by the Orleans Parish School Board ("OPSB") suffered extensive damages during Hurricane Katrina. Excess insurers argued that because the applicable policies excluded damages caused by mold, OPSB could not recover for damages resulting from mold regardless of the cause.[5] OPSB argued, just as plaintiffs argue in the present matter, that the policies did not exclude coverage for mold when caused by a covered peril. The trial court granted summary judgment and found that there was no coverage for mold regardless of the potential source or initial contributing factor.

On appeal, the Fourth Circuit reversed the trial court's judgment and found that the phrase "caused by mold" contained in the exclusions did not mean that all damages consisting of mold were excluded. *Orleans*, 123 So.3d at 796. Rather, it found that this language created a distinction between mold as a loss and mold as a cause of the loss that must be recognized when determining whether mold damages are covered. *Id*. The *Orleans* court explained, however, that despite this distinction, it disagreed with OPSB's assertion, similar to plaintiffs' assertion in the present matter, that "*all* mold-related damage would be covered under the policies as long as the mold resulted from a covered loss." *Id.* at 796-97. The court explained that it rejected this argument "because mold, arguably, will have always been caused by something, and can always potentially lead to some other damage – whether that be an odor, an infection or illness, further property damage, *or remediation costs*." [Emphasis added.] *Id.* at 797. The *Orleans* court reasoned that the better question is whether once the mold appears, "what additional damages can be attributed in some way to the presence of mold? It is these damages that we believe the mold exclusion prohibiting recovery for damages 'caused by' mold are designed to address." *Id.*

---

[5] The policies at issue in *Orleans* only contained provisions excluding loss or damage caused by mold and did not include provisions adding limited coverage as the mold endorsement does in the present matter.

Furthermore, in *Hayes v. Southern Fidelity Ins. Co.*, 2014 WL 5305683 (E.D. La. 10/15/14), the district court considered a virtually identical mold endorsement that excluded loss caused directly or indirectly by mold, but provided for $10,000.00 of additional coverage based on provisions similar to the mold endorsement presently before this Court. In its summary judgment motion, the insurer asserted that the plaintiff's claims "associated in any form or fashion due to mold" were subject to the limited coverage amount. In rejecting this argument and applying the reasoning explained above in *Orleans*, the *Hayes* court reasoned that the "mold endorsement provides for $10,000.00 worth of coverage for 'all loss payable under Property Coverages caused by [mold], and various types of remediation." *Id.* at p. 12. The court also recognized that the $10,000.00 limit for damages caused by mold applied to the extent that the mold caused an increase in the loss:

> Importantly, within the mold exclusion clause, the policy at issue reinstates coverage if the loss was first 'caused by' a peril insured against, and then coverage is limited in the endorsement only to the extent that the 'fungi', wet or dry rot or bacteria ***causes an increase in the loss***. These policy provisions are consistent with the linear analysis questions the *Orleans Parish Sch. Bd.* court state are appropriate: '[A]re there any damages along the sequential chain of losses caused wholly or in part by mold? In other words, once mold appears—for whatever reason—what additional damages can be attributed in some way to the presence of the mold?' or 'what other damages have resulted solely as a result of the mold which would not have been present but-for the presence of mold[?]'

*Id.* at p. 13 [Emphasis added].

Plaintiffs contend that like the insurer in *Hayes*, Federated has taken a position contrary to the findings in these cases and contrary to the language in its policy by arguing *all mold* damages are excluded from coverage and subject to the $5,000.00 limit. We disagree with this characterization of Federated's position. Federated agrees that the mere presence of mold does not convert covered damages, such as baseboards and flooring that became wet and water logged, into a

loss subject to the $5,000.00 limit. Federated's position is that any increase in the loss caused by mold, particularly the additional remediation costs plaintiffs seek to recover, are subject to the $5,000.00 limit. The Additional Coverage Section E.13.d of the policy at issue provides that if the property sustains a covered loss or damage "not caused in whole or in part" by mold, the loss is not subject to the $5,000.00 limit, "except to the extent that the [mold] *causes an increase in the loss*." [Emphasis added.] The Additional Coverage Section clearly explains that the $5,000.00 limit applies to the remediation costs to remove mold, to tear out and replace any covered property needed to gain access to mold, and the cost of testing to confirm the absence, presence or level of mold.

Plaintiffs, on the other hand, ask this Court to find that if a covered loss occurs and then mold forms, all subsequent damages resulting from mold must be covered. Plaintiffs contend that mold is excluded only when it emanates from a source independent of the underlying covered peril. Plaintiff's position is contrary to the reasoning set forth in both *Orleans* and *Hayes*, which both recognize that once mold appears, it can cause additional damages or losses that would not have occurred, but for the presence of mold, and are therefore, subject to the applicable provisions of a mold exclusion and endorsement. The policy at issue in the present matter clearly states that costs to remove mold and to remove and replace property to access mold are additional losses included in the $5,000.00 limit.

Furthermore, the courts in both *Orleans* and *Hayes* recognized that no damages whatsoever, including damages resulting to property that becomes wet, are recoverable under these policies unless the initial damage is caused by a covered peril. *Orleans*, 123 So.3d at 797; *Hayes*, 2014 WL 5305683, p. 12. If we accepted plaintiffs' interpretation that all mold damages are recoverable when a covered peril causes the mold, the mold exclusion and endorsement would be rendered meaningless. The flaw in plaintiffs' reasoning is that they fail to

recognize and account for the clear and unambiguous policy language that explains that increases in loss, and particularly remediation costs caused by mold, are included in the $5,000.00 limit.

Plaintiffs finally contend that genuine issues of material facts exist based on the estimate provided by their appraiser, Anita Preston, for an additional $31,858.51 in mold-related damages. Ms. Preston does not state in her estimate or in her affidavit that any of the property itemized in her estimate were water-damaged. Rather, Ms. Preston's estimate states that it pertains to "mold remediation only." Just as the *Hayes* court recognized that the mold coverage limit in an identical mold endorsement included "remediation costs," we find that the $5,000.00 limit includes costs for mold remediation, including costs to remove the mold and to remove and replace any cabinets, walls, baseboards and flooring necessary to access the mold. Accordingly, we find that the trial court did not err in finding that Federated paid the $5,000.00 limit for mold losses and that no further losses caused by mold were owed under the policy.

### *Fourth Assignment of Error*

In their fourth assignment of error, plaintiffs argue that the trial court erred in finding that they failed to carry their burden of proof regarding their claims for bad faith penalties and attorney's fees.

Federated recognizes that, in their appellate brief, plaintiffs claim Federated is liable for bad faith damages for 1) refusing to appraise mold damages; 2) inadequate pre-appraisal payments to plaintiffs; and 3) failure to timely and adequately pay ALE non-mold-related claims, and that the trial court erred in dismissing these claims. However, Federated's motion for summary judgment was limited to the first item – whether or not Federated acted in bad faith "in not appraising mold losses in light of the prior payment of the policy's mold limit." Federated further recognized in its memorandum supporting its summary judgment

motion that plaintiffs had raised other bad faith claims against it, but only sought dismissal of the bad faith claim based on its refusal to appraise additional mold-related damages. Following the hearing on the motion, however, the summary judgment entered in favor of Federated dismissed all of plaintiffs' bad faith claims, with prejudice.

La. C.C.P. art. 966(F) provides that a "summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." *See Salathe v. Parish of Jefferson Through Department of Sewerage*, 18-447 (La. App. 5 Cir. 12/1918), 262 So.3d 429, 434.

Plaintiffs do not dispute that Federated paid the $5,000.00 limit for mold losses in a timely manner. Therefore, considering our finding that the trial court properly dismissed plaintiffs' claims to recover additional mold losses, we find that the trial court did not err in dismissing plaintiffs' claim that Federated acted in bad faith in refusing to appraise additional mold losses. However, we find that the trial court erred by entering summary judgment as to any other bad faith claims plaintiffs have alleged against Federated because they were not raised as issues in Federated's motion for summary judgment. Accordingly, the January 22, 2021 judgment is reversed to the extent that it dismissed plaintiffs' bad faith claims other than the bad faith claim relating to mold damages.[6]

## DECREE

In conclusion, we affirm the trial court's January 22, 2021 judgment, in part, finding the mold endorsement to be unambiguous and enforceable, and dismissing, with prejudice, plaintiffs' claims for additional insurance proceeds and bad faith damages caused by mold losses. We reverse, in part, the portion of the judgment

---

[6] We do not express an opinion as to whether or not plaintiffs can meet their burden of proof to establish their other claims for bad faith damages.

dismissing plaintiffs' bad faith claims other than the bad faith claim relating to

mold damages.

**<u>AFFIRMED IN PART; REVERSED<br> IN PART; REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 19, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-179

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
GALEN M. HAIR (APPELLANT)          JAMES A. PRATHER (APPELLEE)          ELTON F. DUNCAN, III (APPELLEE)

**MAILED**
TRENT J. MOSS (APPELLANT)          KELLEY A. SEVIN (APPELLEE)          C. BOWMAN FETZER, JR. (APPELLEE)
ATTORNEY AT LAW                    ATTORNEY AT LAW                     JAMES W. ADAIR (APPELLEE)
3540 SOUTH I-10 SERVICE ROAD WEST  400 POYDRAS STREET                  ATTORNEYS AT LAW
SUITE 300                          SUITE 1200                          THREE SANCTUARY BOULEVARD
METAIRIE, LA 70001                 NEW ORLEANS, LA 70130               THIRD FLOOR
                                                                       MANDEVILLE, LA 70471